UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD LEO HILBORN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-840 |
| | § | |
| KLEIN INDEPENDENT SCHOOL DISTRICT AND | § | |
| GEORGAN REITMEIER | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's Motion for Leave to Amend Complaint.  Dkt. 22.

Upon consideration of the motion, plaintiff's proposed amended complaint, defendants' response,

and the applicable law, it is the opinion of the court that plaintiff's motion should be GRANTED in

part and DENIED in part.

## BACKGROUND

Plaintiff Donald Leo Hilborn is the parent of three children who have attended school in

Klein Independent School District (KISD).  Dkt. 11, at 10.  In 2008, KISD held a series of school

board meetings regarding an upcoming bond election.  Dkt. 23, at 3.  Hilborn opposed the proposed

bond election and alleges his attempts to voice his opposition were rejected by KISD.  *Id.*  He

believes he was prohibited from attending the meeting based on the content of his speech, while

vendors and others in support of the bond election were allowed entry.  *Id.*   KISD board meetings

historically have been open to the public, with time reserved each meeting for public comment.  *Id.*,

at 3–4.

Defendants KISD and Ms. Georgan Reitmeier, KISD president, respond that Hilborn's new complaints are merely an effort to reurge his previous claims already dismissed by this court. Dkt. 29, at 2–3. Defendants do not deny Hilborn was prevented from speaking at certain school board meetings, but contend he had no constitutional right to speak at the meetings unless a legal forum for input was created by the governing body. *Id*., at 4. While defendants do not expressly deny creating a legal forum, their denial is implicit in their response to Hilborn's motion. *See, e.g.*, Dkt. 29, at 4–5.

Hilborn's first complaint alleged defendants failed to comply with the Texas Open Meetings Act and Texas Public Information Act in violation of his constitutional right to due process. Dkt. 7. That complaint was dismissed with prejudice because the court determined neither state act created a protected property interest and Hilborn thus failed to state a valid claim under § 1983. Dkt. 18, at 1. Prior to dismissal, Hilborn sought to amend his complaint, alleging violations of his due process, equal protection, and First Amendment rights by defendants. Dkt. 23.

## ANALYSIS

After a party's time to amend his complaint has passed, he may only amend with written consent of the other party or leave of the court. FED. R. CIV. P. 15(a). A presumption in favor of amendment underlies the rule governing amendments and affords the court broad discretion in granting leave to amend. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc*., 336 F.3d 375, 386 (5th Cir. 2003). A motion for leave to amend should not be denied unless there is undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; or undue prejudice to the opposing party. *Id*. However, given that Hilborn's original complaint was dismissed by the court and to avoid another successful motion to

2

dismiss by the defendants, the court will analyze plaintiff's motion using a futility analysis. That is, the court will grant plaintiff's motion to amend only if his new claims are sufficient to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therefore, plaintiff's amended complaint, when viewed in the light most favorable to him as the moving party, must state a valid claim for relief. FED. R. CIV. P. 12(b)(6).

### *Due Process Claims*

Hilborn again asserts in his proposed amended complaint that defendants deprived him of his constitutional due process rights when KISD held closed meetings regarding an upcoming bond election. Dkt. 23, at 6. Hilborn claims he was ultimately harmed by the subsequent tax increase approved in the bond election. *Id*. However, the court has already dismissed this claim with prejudice, and plaintiff is prohibited from reurging it here. Dkt. 18, at 1.

Hilborn additionally proposes a new due process claim: namely that defendants interfered with his fundamental liberty interest in the care, custody, and control of his children by restricting his opportunity to engage in political activism during the school bond election and by denying his requests for information under the Texas Public Information Act. Dkt. 23, at 6. In other words, because he was denied access to information regarding the election, Hilborn was unable to make "decisions" regarding the care of his children. *Id*.

The Supreme Court has indeed recognized a parent's right "to control the education of [his] own." *Pierce v. Soc'y of Sisters*, 269 U.S. 510, 534–35, 45 S.Ct. 571 (1925). It is well settled law, however, that parental rights are not absolute in the public school context and can be subject to reasonable regulation. *See, e.g., Runyon v. McCreary*, 427 U.S. 160, 177, 96 S.Ct. 2586 (1976) (recognizing no parental right to educate children in private segregated schools); *Kite v. Marshall*, 661 F.2d 1027, 1277 (5th Cir. 1973) (holding the decision of a non-profit association of public

3

schools to prohibit students who attend specialized athletic training camps from participating in school athletics for one year promoted legitimate state objectives and therefore did not violate the due process rights of the students' parents).  Hilborn, however, has neither identified a particular parental decision that was infringed upon by defendants nor alleged that the bond decision did not promote legitimate state objectives.  It is not enough to file suit against the school board and allege a constitutional violation simply because plaintiff disagrees with a decision made by defendants.  Therefore, Hilborn's request to amend is DENIED as to his due process claims.

### *Equal Protection*

Hilborn also claims defendants violated the equal protection rights of the Parent Faculty Organization (PFO) by directing funds to rebuild Klein High School, a primarily white school, because the decision will disadvantage "larger portions of a minority group," which will now have to wait several years for new facilities.  Dkt. 23, at 4–5.  Hilborn, a PFO member, offers no further definition of the allegedly harmed group, other than to say it is made up of "certain minorities" who are "eligible for the National School Lunch Program (NLSP)." *Id.*, at 5.  Because defendants decided to rebuild Klein High School, Hilborn claims that the parts of the district with "the higher portion of NLSP eligible children" will be overcrowded.  *Id.*

To state a viable equal protection claim, Hilborn must establish "the existence of purposeful discrimination" motivating the state action which caused his complained-of injury.  *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).  In the context of equal protection, a discriminatory purpose implies that "the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.*  To state a viable equal protection claim in this case, therefore, plaintiff must allege defendants were motivated to allocate funds toward the rebuilding of Klein High School, at least in part, because of

the negative impact it would have on an identifiable minority group.  Hilborn does not claim defendants' decision was racially motivated.  Plaintiff's request to amend is therefore DENIED as to his equal protection claim.

### First Amendment Violation

Hilborn makes several claims alleging defendants violated his freedom of expression rights, including his "right to hear," "right to expressive conduct," and "freedom of expression liberty interest."  Dkt. 23, at 3–9.  Though plaintiff addresses each of these alleged violations separately, they can be condensed into a single First Amendment claim.  Essentially, Hilborn argues defendants violated his First Amendment freedom of expression rights when KISD held closed meetings to discuss a bond election.  Dkt. 23, at 3–9.

For First Amendment purposes, "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948 (1983).  The Supreme Court has adopted a "tripartite forum-based framework" to analyze First Amendment issues involving government owned property.  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439 (1985).  Traditional public forums are locations that "by long standing tradition or by government fiat have been devoted to assembly or debate."  *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989) (citation omitted).  Any effort by the state to exclude speakers from such traditional public forums are subject to rigorous First Amendment scrutiny.  *Id.*  Similarly, a "designated public forum" may be created by "government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."  *Cornelius*, 473 U.S. at 802.  The state's power to restrict speakers' access to this category of public

forum is subject to the same strict scrutiny as traditional public forums. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 345 (5th Cir. 2001).  That is, the state must show that a content-based prohibition on speech serves a compelling state interest and is narrowly tailored to that interest. *Id*.

In the instant case, Hilborn claims defendants created a designated public forum in the boardroom of KISD's central office by consistently setting aside approximately twenty minutes of each school board meeting for public comment. Dkt. 23, at 4.  This time was reserved for citizens to discuss agenda items, request information, ask for a recitation of policy, or redress grievances. *Id*.  Plaintiff believes he was arbitrarily prevented from attending and speaking at KISD meetings during the consideration of the bond election because he opposed the proposed school board action, while vendors and others in favor of the action were permitted to attend. *Id*.

Defendants respond that no legal forum for citizen input existed but put forth no other argument on this issue. Dkt. 29, at 4.  Because Hilborn alleges defendants designated "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects," he has pled sufficient facts to claim that a designated public forum existed and that he was prevented from speaking at that forum in violation of his First Amendment rights. *Cornelius*, 473 U.S. at 802.  Therefore, considering the standard of Rule 12(b)(6) of the Federal Rule of Civil Procedure, Hilborn has stated a valid First Amendment claim that would survive a motion to dismiss by defendants. FED. R. CIV. P. 12(b)(6).  Plaintiff's motion is GRANTED as to his First Amendment claim.

## CONCLUSION

For the reasons stated above, Hilborn's Motion to Amend as to his due process and equal protection claims is DENIED, and his motion is GRANTED as to his First Amendment claim. Plaintiff is ordered to file an amended complaint limited to his First Amendment claim only within seven days of the date of this order.

It is so ORDERED.

Signed at Houston, Texas, on October 29, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY