```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

DONALD LEO HILBORN,              §
                                 §
        Plaintiff,               §
                                 §
v.                               §   Civil Action No. H-09-840
                                 §
KLEIN INDEPENDENT SCHOOL         §
DISTRICT and GEORGAN REITMEIER,  §
                                 §
        Defendants.              §
```

**<u>MEMORANDUM OPINION ON ATTORNEYS' FEES</u>**

On April 5, 2010, the court issued a memorandum and recommendation on attorneys' fees. Although the parties had consented to the jurisdiction of the undersigned, the case had not been transferred. Now that the case has been transferred, the court reissues the memorandum and recommendation as a memorandum opinion.

Presently pending before the court is Defendants' Motion for Attorneys' Fees and Expenses (Docket Entry No. 53) and the response filed thereto. For the reasons explained below, the motion is **GRANTED IN PART, DENIED IN PART**.

On March 20, 2009, Plaintiff, proceeding pro se, filed this action complaining that Defendant Klein Independent School District ("KISD") failed to comply with the Texas Open Meetings Act ("TOMA") and the Texas Public Information Act ("TPIA") and, in so doing, violated his due process rights. Plaintiff claimed that the KISD School Board held meetings without providing the notices required by state law, that during those meetings a bond election was

proposed and that, subsequently, the election was held and Plaintiff's taxes were increased, thus depriving him of his property.

Defendants filed a motion to dismiss that was opposed by Plaintiff. On July 7, 2009, the court entered a memorandum and recommended that the action be dismissed because neither the TOMA nor the TPIA created a protected property interest. See Memorandum and Recommendation, Docket Entry No. 14. In Plaintiff's objections to the Memorandum and Recommendation, he raised, for the first time, a First Amendment/liberty interest claim. See Plaintiff's Objections, Docket Entry No. 15. Several days later, Plaintiff filed an Amended Petition that made several new constitutional claims. See Plaintiff's Amended Petition, Docket Entry No. 16. Defendants filed a motion to strike the amended petition on the ground that it was filed without leave of court. See Defendant's Motion to Strike, Docket Entry No. 17. This motion was granted on August 19, 2009. See Order, Docket Entry No. 19. The court ordered Plaintiff to file a motion for leave to amend within ten days and to attach the proposed amended complaint. See id.

Plaintiff timely complied with the court's order. Defendants opposed the motion for leave to amend, arguing that Plaintiff's new complaints were futile in light of the court's earlier ruling. On October 29, 2009, the court granted Plaintiff leave to proceed with his First Amendment claim but denied leave to add two other

Constitutional claims. See Memorandum Opinion and Order, Docket Entry No. 31. In the First Amendment claim, Plaintiff contended that KISD created a designated public forum at the board meetings by consistently setting aside approximately twenty minutes of each school board meeting for public comment. See Plaintiff's Amended Complaint, Docket Entry No. 32, pp. 3-4. Plaintiff concludes that "KISD restricted Plaintiff's freedom of expression specifically because of the content of Plaintiff's message and not because of a sufficient governmental interest." Id. at p. 3.

The parties met for their Rule 26 conference on December 2, 2009. On December 7, 2009, Plaintiff filed a motion for voluntary dismissal. See Plaintiff's Motion for Voluntary Dismissal, Docket Entry No. 49. In the motion, Plaintiff averred that, due to family and job obligations, he wished to dismiss the action.

This dismissal was not opposed by Defendants, however, Defendants advised the court that they intended to seek attorneys fees and costs under 42 U.S.C. § 1988 ("Section 1988"). See Defendants' Response to Plaintiff's Motion to Dismiss, Docket Entry No. 50.

On January 4, 2010, the court granted Plaintiff's motion and dismissed the action, with prejudice. See Order, Docket Entry No. 52.

## Legal Standard

Section 1988 permits a prevailing party, other than the United States, a reasonable attorney's fee as part of the costs of a successful civil rights action.[1] In general, a prevailing plaintiff is awarded fees in all but the exceptional case where "special circumstance" would make such an award unjust. See Christianburg Garment Co. v. EEOC, 434 U.S. 412, 416 (1978). On the other hand, a prevailing defendant may be awarded fees only if the court finds that the claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co., 434 U.S. at 422.

The court must first address whether Defendants are prevailing parties based on Plaintiff's voluntary dismissal of the action with prejudice. In Dean v. Riser, 240 F.3d 505 (5th Cir. 2001), the Fifth Circuit weighed the policy considerations present when determining what standard should apply to a defendant's request for fees under Section 1988(b). The court noted, "[T]he mere dismissal of the plaintiffs' suit will not *establish* that the underlying claim was frivolous, unreasonable, or groundless." Dean, 240 F.3d at 512 (emphasis in original). The court acknowledged that many circumstances might influence a plaintiff to voluntarily dismiss

---

[1] Section 1988(b) states:

"In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

his claim with prejudice, such as the advice of counsel or a desire to pursue an exclusively state law claim. The court reasoned: This type of strategic decision reveals nothing about the merits of a plaintiff's case but merely indicates his preferred forum. As such, it does not warrant a conclusion that a defendant in such a case has prevailed within the meaning of § 1988. Dean, 240 F.3d at 510.

On the other hand, the court acknowledged that when a plaintiff withdrew his complaint "'to escape a disfavorable judicial determination on the merits,' the balance tips in favor of the counter policy to discourage the litigation of frivolous, unreasonable, or groundless claims." Id. The court stated:

> Any rule that categorically forecloses the possibility of a defendant being found a prevailing party in such circumstances could seriously threaten the effectuation of this policy. A plaintiff could bring a groundless civil rights claim and avoid the consequences contemplated pursuant to § 1988 by merely dismissing his claim before adjudication. Under this construction of the law, the plaintiff would not only be able to shirk responsibility for his actions but also would be inequitably positioned to strip the defendant's protection, as contemplated under § 1988, from burdensome litigation with no legal or factual foundation.

The Dean court held that a defendant is not a prevailing party simply as a result of the plaintiff's voluntary dismissal of the lawsuit, unless the defendant can demonstrate that the plaintiff withdrew the suit to avoid an unfavorable judgment on the merits. Dean, 240 F.3d at 511. In making this determination, the court may consider the record before the court, supplemental affidavits and,

if necessary, testimonial evidence.  Id.  The court may also "consider (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the court held a full trial." Fox v. Vice, 594 F.3d 423, 427 (5th Cir. 2010), citing Myers v. City of West Monroe, 211 F.3d 289, 292 (5th Cir. 2000).

Here, Defendants support their contention that Plaintiff withdrew his suit to avoid an unfavorable judgment with two affidavits addressed to the merits of his First Amendment claim. Beverly McGlasson ("McGlasson"), the first affiant, is the administrative assistant to the KISD Superintendent and also provides secretarial support to the KISD Board of Trustees.[2] McGlasson averred that on March 4, 2008, the KISD Board of Trustees called a bond election.[3] McGlasson stated the minutes of the Board of Trustees showed that Plaintiff did not sign up to speak during the citizen participation portion of the board meeting prior to the May 10, 2008 bond election.  Plaintiff signed up to speak at the May 13, 2008 meeting and was allotted the same amount of time that other citizens were granted.  McGlasson stated that this was the

---

[2] Defendants' Motion for Attorneys' Fees and Expenses, Docket Entry No. 53, Ex. A, Affidavit of Beverly McGlasson, p. 1.

[3] Id. at p. 2.

only occasion where Plaintiff signed up to speak at a board meeting from 2007 through the end of 2009.[4]

Judy Rimato ("Rimato") averred that she is the Assistant Superintendent for Facilities and School Services for KISD.[5]  In 2007 and 2008, Rimato was the administrative lead for the 2008 Bond Steering Committee.[6]  Rimato reviewed the sign-in sheets from the 2007 and 2008 Bond Steering Committee meetings.[7]  Rimato averred that, to the best of her knowledge, Plaintiff did not sign up to speak at any Bond Steering Committee meeting and did not speak at any of those meetings.[8]

In making the determination whether Defendants are prevailing parties, the court must focus on whether Defendants have met their burden of showing that Plaintiff withdrew his suit to avoid an unfavorable judgment.  Although Plaintiff dismissed his First Amendment claim very soon after receiving leave of court to pursue it, if Plaintiff had *no* factual basis to make such a claim, even an early withdrawal of the claim would satisfy the Dean standard that

---

[4]   Id. at pp. 2-3.

[5]   Defendants' Motion for Attorneys' Fees and Expenses, Docket Entry No. 53, Ex. B.  Affidavit of Judy Rimato, p. 1.

[6]   Id.

[7]   Id.

[8]   Id. at p. 2.

he withdrew the claim to avoid the inevitable adverse judgment. See Dean, 240 F.3d at 510.

Here, Plaintiff fails to challenge, in any way, the affidavits of McGlasson or Rimato or provide a sworn factual basis for his claim that he was prevented from speaking at a KISD board meeting because of the content of his speech.[9] Without any factual support for a claim that he was deprived of an opportunity to speak at a public forum, Plaintiff could not hope to avoid an adverse judgment.

It is not enough for Plaintiff to point to the Federal Rule of Civil Procedure 12(b)(6) standard and argue that his claim cannot be frivolous because the court found that he alleged a prima facie First Amendment violation if the supporting allegations had no basis in fact. Also, Plaintiff's contention that he dismissed the case because of his obligations to his family and employer and his wife's worsening medical condition, even if true, do not provide a legal excuse for bringing a lawsuit with no factual foundation.

As the undisputed evidence before the court demonstrates that, as a factual matter, Plaintiff was not deprived of a right to speak

---

[9] Defendants aver in their motion for attorneys' fees that their counsel informed Plaintiff at the Rule 26 conference that they intended to pursue attorneys' fees and planned to file a motion to dismiss in the near future and state that Plaintiff dismissed the action five days later. See Defendants' Motion for Attorneys' Fees and Expenses, Docket Entry No. 53, p. 7. However, there is no competent evidence supporting such averments and, therefore, the court disregards this portion of Defendants' argument as support for their motion.

at any KISD public forum, Defendants have met their burden of showing that Plaintiff's voluntary dismissal of his First Amendment claim was to avoid an unfavorable result and are prevailing parties in this litigation with respect to Plaintiff's First Amendment claim.

The court must next consider the amount of Defendants' fees that are directly attributable to Plaintiff's First Amendment claim.

The first step in a fee calculation is to determine the reasonable number of hours expended on the case multiplied by the reasonable hourly rate, also known as the lodestar. See Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998).

Hourly Rate

David Feldman ("Feldman"), lead counsel, stated in his affidavit that his hourly rate is $400 per hour and his co-counsels' rates are $275 for Ellen Spaulding ("Spaulding") and $215 for LeAnne Lundy ("Lundy"). Defendants support the reasonableness of these fees with the affidavit of Feldman, who avers that, in his thirty-three years of experience, the rates are reasonable for the defense of Section 1983 actions in the Southern District of Texas.[10] Plaintiff does not directly challenge these hourly rates as unreasonable but simply argues that Defendants were required to

---

[10] Defendants' Motion for Attorneys' Fees and Expenses, Docket Entry No. 53, Ex. C, Affidavit of David M. Feldman, p. 2.

have more support for their claim than the conclusory language found in Feldman's affidavit.[11] In the absence of a factual challenge to the reasonableness of Defendants' counsels' billing rates, the court finds that the Feldman affidavit is sufficient to establish that his firm's rates are within the reasonable range for fees charged in this type of case in this geographical area for attorneys with similar experience.[12]

### Hours Expended

Although Defendants seek attorneys' fees from May 26, 2009, through November 30, 2009, the billing records reflect hours attributable to more than Plaintiff's First Amendment claim. Plaintiff first raised the First Amendment claim on August 25, 2009, in a proposed amended complaint. See Plaintiff's Amended Complaint, Docket Entry No. 23. Accordingly, the court denies all requested fees prior to that date.

On August 25, 2009, Lundy expended .75 hours reviewing Plaintiff's motion for leave to amend and the proposed amended

---

[11] See Plaintiff's Response and Opposition to Defendants' Motion for Attorneys' Fees and Expenses, Docket Entry No. 54, p. 9, Ex. B., Affidavit of Peter M. Blute, p. 2.

[12] The court notes that in Fisher Scientific Int'l, Inc. v. Modrovich, H-03-467, 2005 WL 3348901, at *10 (S.D. Tex. Dec. 8, 2005), the court found that $405 per hour was a reasonable and necessary rate when charged by a senior partner in Houston, Texas, for the time period 2003-2005. Thus, the $400 hourly rate in 2009 charged by Feldman, a senior partner having over thirty-three years of experience, does not appear to be outside the norm.

complaint. The court finds this to be reasonable. (Lundy - .75 x $215 = $161.25).

Defendants opposed this amendment, filing a response on September 18, 2009. See Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint, Docket Entry No. 29. On September 14, 15, and 17, 2009, Lundy spent 11.75 hours preparing Defendants' opposition to the motion for leave to amend. Spaulding billed .25 hours conferring on the motion. Feldman spent 1.75 hours conferring on and revising the motion. Defendants also spent $98.72 in Lexis/Nexis research charges and $5.71 in postage.

In the opposition to Plaintiff's motion to amend, Defendants focused on Plaintiff's equal protection and due process claims and spent approximately half a page on Plaintiff's third claim, the First Amendment violation at issue here. As most of the Defendants' response did not concern Plaintiff's First Amendment claim, the court reduces each attorney's billed time by two-thirds to reflect that time spent only on the First Amendment claim. (Lundy - 11.75 x .33 x $215 = $833.66)(Spaulding - .25 x .33 x $275 = $22.69)(Feldman - 1.75 x .33 x $400 = $231). The court also reduces the Lexis/Nexis charge by two-thirds ($98.72 x .33 = $32.58) for the same reason, but imposes the full postage of $5.71.

On October 29, 2009, the court granted in part and denied in part, Plaintiff's motion for leave to amend. On October 30, 2009, Feldman spent .75 hours reviewing the court's order and conferring

with co-counsel; Lundy spent .25 hours conferring about the order. As most of the court's opinion dealt with Plaintiff's other claims, the court deems that only one-third of this time is attributable to Plaintiff's First Amendment claim. The court reduces the time billed by two-thirds. (Feldman - .75 x. .33 x $400 = $99)(Lundy - .25 x. .33 x $215 = $17.74).

On November 12, 2009, Defendants filed an answer to Plaintiff's amended complaint. The records reflect that on November 3, 11 and 12, 2009, Lundy spent 7.25 hours reviewing and analyzing the amended complaint, preparing the answer and responding to Plaintiff's motion for declaratory judgment. Plaintiff's motion for declaratory judgment, in which he sought advice from the court related to his planned future attendance at several school board meetings, was not related factually to Plaintiff's First Amendment claim. On November 3 and 12, 2009, Feldman spent 1.75 hours reviewing and revising the answer and response to Plaintiff's motion and discussing same with the client. The court deems that one-half of this time was spent on the answer and accordingly awards those fees. (Lundy - 7.25 x .5 x $215 = $779.37)(Feldman - 1.75 x .5 x $400 = $350).

On November 25 and 27, 2009, Spaulding conferred with Plaintiff and prepared for the Rule 26 conference, billing 1.75 hours. The court finds that this time is directly attributable to

Plaintiff's First Amendment claim.  (Spaulding - 1.75 x $275 = $481.25).

Defendants claim a number of hours for attorney conferences but fail to connect these conferences to Plaintiff's First Amendment claim.  Also, the court declines to award fees for time expended on the amendment of the answer, which added the affirmative defense of res judicata, time spent considering and preparing a motion for summary judgment that was never filed, and for unexplained Lexis/Nexis, postage, and fax charges as Defendants have failed to link those charges to Plaintiff's First Amendment claim.

Therefore, for the reasons stated above, the court finds that the lodestar amount is $2,975.96 and taxable expenses are $38.29.

Next, the court considers whether the lodestar should be adjusted upward or downward based on twelve factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989); Thompson v. Connick, 553 F.3d 836, 867 (5th Cir. 2008).  Those factors are: (1) the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount

involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-719.

Defendants do not argue that any of the factors are present to justify a departure from the lodestar. Likewise, Plaintiff does not contend that any Johnson factor is applicable to lower the lodestar amount. The court agrees that there should be no adjustments to the lodestar amount.

It is therefore **ORDERED** that Plaintiff pay to Defendants the sum of $2,975.96 in attorneys' fees as Defendants are the prevailing parties in this suit. Costs in the amount of $38.29 should be taxed against Plaintiff.

**SIGNED** this 12th day of April, 2010, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge